1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| JUDITH AMBERS,<br><br>                    Plaintiff,<br><br>          v.<br><br>WELLS FARGO BANK, N.A. a/k/a<br>WELLS FARGO HOME MORTGAGE,<br>f/k/a WACHOVIA BANK, f/k/a WORLD<br>SAVINGS; AND DOES 1 TO 10,<br><br>                    Defendants. | Case No. 13-cv-03940 NC<br><br>**ORDER GRANTING WELLS<br>FARGO'S MOTION TO DISMISS<br>WITH LEAVE TO AMEND**<br><br>Re: Dkt. No. 8 |

This case arises out of the foreclosure on a 2006 mortgage loan taken out by plaintiff's husband. Pending before the Court is Wells Fargo's motion to dismiss the complaint for lack of standing and for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below, the Court finds that plaintiff does not have standing and has failed to state a claim, and therefore GRANTS Wells Fargo's motion to dismiss the complaint with leave to amend.

## I. BACKGROUND

**A.      The Allegations of the Complaint**

In analyzing claims under Federal Rule of Civil Procedure 12(b)(6), the Court assumes that all material facts alleged in the complaint are true. *Coal. For ICANN*

1  *Transparency, Inc. v. VeriSign, Inc.*, 611 F.3d 495, 501 (9th Cir. 2010).

2      Pro se plaintiff, Judith Ambers, brings this action against "Wells Fargo Bank, N.A.,

3  a/k/a Wells Fargo Home Mortgage, f/k/a Wachovia Bank, f/k/a/ World Savings." Dkt. No.

4  1 at 22 ¶ 2.[1]  According to the complaint, World Savings was the original credit grantor and

5  lien holder on "Petitioners home located at 10951 Cameron Ave. Oakland, California,

6  94605." *Id.* at 22 ¶ 3.  The complaint alleges that a "Deed of Trust in the name of trustor,

7  Brent Ambers [plaintiff's husband] was issued on or about November 25, 2006 and said

8  transaction was recorded on or about November 28, 2006 in the official records in the office

9  of the Recorder of Alameda County; California," "[s]aid obligation including 'One Note

10  For The Original Sum of $1,125,000.00.'" *Id.*  "Nearly 3 years later a subsequent Notice of

11  Default was recorded resulting in a forced short-sale of the subject property." *Id.*  In

12  September 2009, Cal-Western Reconveyance was substituted as a trustee.  *Id.* at 23 ¶ 4.

13      Plaintiff alleges that, "as a direct result of [the] national economic collapse, and

14  business/income decline subsequent to the purchase of the property," her husband's

15  personal income diminished significantly, plaintiff's family business closed, and "the toll on

16  their financial condition had proven catastrophic." *Id.*  As a result, a decision was made to

17  file a Chapter 13 Bankruptcy.  *Id.*  Brent Ambers was arrested and eventually sentenced to a

18  five-year prison term in connection with a domestic violence incident.  *Id.* ¶ 5.  Plaintiff

19  temporarily physically moved out of the house but continued to have her dogs there and

20  returned daily to take care of them and the house.  *Id.*  On October 30, 2010, plaintiff

21  moved back into the house, and on December 10, 2010, she started making mortgage

22  payments.  *Id.*  Plaintiff also made a lump sum payment and caught up on Brent Ambers's

23  bankruptcy payments.  *Id.*  Plaintiff further alleges that she paid for a "loan modification

24  program" which "assured her that the existing loan would be paid off and a new loan would

25  be through a private bank at a much lower interest rate, therefore lowering payments and

26  getting Mr. Ambers out of Bankruptcy." *Id.*  The loan modification program advised

27

28  [1] Wells Fargo is a successor to Wachovia Mortgage, FSB, formerly known as World Savings Bank, FSB.  Dkt. No. 9-1 at 26-37.

plaintiff "not to make any more mortgage or Bankruptcy payments do to [sic] obtaining a new loan with this program, Mr. Ambers could not be in Bankruptcy." *Id.* Plaintiff discontinued mortgage and bankruptcy payments. *Id.* The complaint further alleges that the representative and the company "disappeared" around February 2011 and plaintiff eventually found out that the owner of the program was arrested in a real estate scheme in Las Vegas. *Id.*

Public records submitted by Wells Fargo, of which the Court takes judicial notice, show that a notice of default was issued to Brent Ambers and recorded in July 2009. Dkt. No. 9-1 at 38-40. In October 2009, Cal-Western Reconveyance recorded a notice of trustee's sale. *Id.* at 44-47. Brent Ambers filed for bankruptcy protection on March 19, 2010. *Id.* at 49. That bankruptcy proceeding was dismissed on November 23, 2011. *Id.* at 53. As the sale had not completed within one year of the recording of the 2009 notice of trustee's sale (*see* Cal. Civ. Code § 2924g(c)), a second notice of trustee's sale was recorded in December 2011, noticing a January 10, 2012 trustee sale. Dkt. Nos. 8 at 12:25-27; 9-1 at 55-57. On February 9, 2012, a trustee's deed upon sale was recorded indicating that the property was sold to Last Mile Properties, LLC on January 24, 2012. Dkt. No. 9-1 at 58-60. On that same date, Brent Ambers filed for bankruptcy a second time. Dkt. No. 9-1 at 62. Subsequently, plaintiff and her husband filed a total of five additional bankruptcy petitions on March 19, 2010, January 24, 2012, June 18, 2012, July 27, 2012, and September 6, 2012. Dkt. No. 9-2 at 2-27. On February 14, 2013, the Bankruptcy Court issued an order granting a motion by Last Mile Properties to confirm that no automatic stay is in effect and denying the motion for preliminary injunction by Brent and Judith Ambers. Dkt. No. 9-1 at 65-66.

Plaintiff alleges that during the bankruptcy process, "it was learned that there were a number of procedural improprieties including Truth in Lending Act (TILA) violations, Real Estate Settlement Procedures Act (RESPA) violations, Equal Credit Opportunity Act (ECOA) violations, and violations in Underwriting Issues." Dkt. No. 1 ¶¶ 5-6. The complaint recites a list of "questions" purportedly raised by "a preliminary Mortgage Loan Audit and Loan Document Analysis" concerning the origination of the loan. *Id.* ¶ 7.

1    Plaintiff alleges that a number of documents and disclosures were absent from the "loan

2    file" in violation of TILA and RESPA.  *Id.*

3          The complaint further asserts that "plaintiffs were fraudulently induced to breach" an

4    unspecified "contract with defendants," *id.* at 28 ¶ 10, defendants violated TILA in the

5    origination of the loan, *id.* at 29 ¶ 17, 33 ¶¶ 42-44, defendants falsely promised "plaintiffs"

6    they were getting a loan modification while "actively foreclosing on plaintiffs property," *id.*

7    at 30 ¶ 24, defendants failed to contact "plaintiffs" prior to recording the notice of default in

8    violation of Civil Code § 2923.5, *id.* at 32 ¶¶ 33-34, and defendants demanded

9    documentation from borrowers with full knowledge or in reckless disregard of the fact that

10   said documentation had already been provided, continued to demand and accept mortgage

11   payments that have in fact foreclosed, and intentionally misled plaintiff into believing that a

12   foreclosure had not occurred or that one had been entered in error, *id.* at 35 ¶ 56.  The

13   complaint sets forth the following seven claims for relief: (1) "Fraudulent Inducement to

14   Breach of Contract"; (2) "Violation of TILA, 15 U.S.C. § 1601 *et seq.*"; (3) "Fraud and

15   Conspiracy to Commit Fraud"; (4) "Violation of California Civil Code  Section 2923.5 *et*

16   *seq.*/Request for Declaratory Relief"; (5) "Predatory Lending in Violation of Truth in

17   Lending"; (6) "Unlawful Business Practices in Violation of Business & Professions Code

18   Section 17200. Predicated on California Civil Code Section 2923.5"; and (7) "Fraudulent

19   Business Practices in Violation of Business & Professions Code Section 17200. Predicated

20   on California Civil Code § 2923.5."  Dkt. No. 1 at 28-35.[2]

21         Plaintiff originally brought this action in Alameda County Superior Court on May 20,

22   2013.  *Id.* at 19.  On August 23, 2013, Wells Fargo removed the action to this Court based

23   on federal question jurisdiction, 28 U.S.C. § 1331, over the claims alleging violations of

24   TILA, RESPA, and ECOA, and supplemental jurisdiction over the remaining, state law

25   claims pursuant to 28 U.S.C. § 1367(a).  *Id.* at 2-3.  The notice of removal also asserts that

26   the Court has diversity jurisdiction over this action.  *Id.* at 4-15.

27

28   [2] The caption of the complaint lists a claim for "Breach of Covenant of Good Faith and Fair
     Dealings" which is not included in the body of the complaint.  *See* Dkt. No. 1 at 21.

Wells Fargo filed a motion to dismiss the complaint, which plaintiff opposed.  Dkt. Nos. 8, 13.  The parties have consented to the jurisdiction of a United States Magistrate Judge under 28 U.S.C. § 636(c).  Dkt. Nos. 7, 12.

**B.    Wells Fargo's Request for Judicial Notice**

As a preliminary matter, the Court addresses Wells Fargo's request for judicial notice of certain documents submitted in connection with its motion to dismiss.

Wells Fargo seeks judicial notice of the following documents, Exhibits A-Q: (A) mortgage note signed by Brent Ambers and dated November 17, 2006; (B) deed of trust recorded November 28, 2006; (C) certificate of corporate existence for World Savings Bank; (D) letter from the Office of Thrift Supervision to World Savings Bank; (E) charter of Wachovia Mortgage, FSB; (F) official  certification of the Comptroller of the Currency stating that effective November 1, 2009, Wachovia Mortgage, FSB converted to Wells Fargo Bank Southwest, N.A., which then merged with Wells Fargo Bank, N.A.; (G) FDIC's profile and history of Wachovia Mortgage, FSB; (H) notice of default recorded July 24, 2009; (I) substitution of trustee recorded September 1, 2009; (J) notice of trustee's sale recorded October 30, 2009, noticing a trustee sale on November 17, 2009; (K) docket in Chapter 13 Bankruptcy Case No. 10-43034 filed in the United States Bankruptcy Court, Northern District of California; (L) notice of trustee's sale recorded December 20, 2011, noticing a trustee sale on January 10, 2012; (M) trustee's deed upon sale from Cal-Western Reconveyance to Last Mile Properties, recorded February 9, 2012; (N) docket in Chapter 13 Bankruptcy Case No. 12-21343 filed in the United States Bankruptcy Court, Eastern District of California; (O) order granting the motion of Last Miles Properties LLC confirming no automatic stay is in effect and denying debtor's motion for preliminary injunction, signed by Bankruptcy Judge William J. Lafferty, III on February 14, 2013, United States Bankruptcy Court, Northern District of California, Adversary Case No. 12-04215; (P) Chapter 13 bankruptcy petitions filed by plaintiff or Brent Ambers on March 19, 2010, January 24, 2012, June 18, 2012, July 27, 2012, and September 6, 2012 in United States Bankruptcy Court, Northern and Eastern District of California bearing Case Nos. 10-

43034, 12-21343, 12-45177, 12-46256, and 12-47437, respectively; and (Q) order on Last Mile Properties' motion confirming that no automatic stay is in effect or alternatively for relief from automatic stay nunc pro tunc filed and entered on January 8, 2013, United States Bankruptcy Court, Northern District of California, Adversary Case No. 12-04215. Dkt. No. 9 at 2:3-4:1.

Generally, a court may not look to matters beyond the complaint without converting a motion to dismiss into one for summary judgment. *Datel Holdings Ltd. v. Microsoft Corp.*, 712 F. Supp. 2d 974, 983 (N.D. Cal. 2010) (citations omitted). However, a court may take judicial notice of material that is submitted as part of the complaint, or is necessarily relied upon by the complaint, as well as matters of public record. *Lee v. City of L.A.*, 250 F.3d 668, 688-89 (9th Cir. 2001). Under Federal Rule of Evidence 201(b), "a judicially noticed fact must be one not subject to reasonable dispute that is either (1) generally known within the territorial jurisdiction of the trial court; or (2) capable of accurate determination by resort to sources whose accuracy cannot reasonably be questioned." *Datel Holdings*, 712 F. Supp. 2d at 983. A court may "take judicial notice of undisputed matters of public record, including documents on file in federal or state courts." *Harris v. Cnty. of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012) (internal citation omitted).

Here, while plaintiff's proposed order in response to defendant's motion to dismiss states that "Wells Fargo's request for judicial notice is denied," *see* Dkt. No. 13-1 at 1:22, plaintiff did not file an opposition to the request explaining why the documents might not be a proper subject of judicial notice, nor did plaintiff dispute the authenticity of the documents. Accordingly, the Court will take judicial notice of the existence of Wells Fargo's Exhibits A-J, L, and M as they are in the public record. *See Fernandez v. Wells Fargo Bank, N.A.*, No. 12-cv-03941 NC, 2012 WL 5350256, at *2 (N.D. Cal. Oct. 29, 2012) (taking judicial notice of the same and similar documents). Finally, the Court takes judicial notice of the existence of Wells Fargo's Exhibits K and N-Q as court documents. *See, e.g.*, *Hunt v. Check Recovery Sys. Inc.*, 478 F. Supp. 2d 1157, 1161 (N.D. Cal. 2007). Wells Fargo's request for judicial notice is granted as to the existence of the documents but

not as to the truth of their contents.  *See* Fed. R. Evid. 201(b); *Lee*, 250 F.3d at 690.

## II. STANDARD OF REVIEW

A motion to dismiss for failure to state a claim under Rule 12(b)(6) tests the legal sufficiency of a complaint.  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  On a motion to dismiss, all allegations of material fact are taken as true and construed in the light most favorable to the non-movant.  *Coal. For ICANN Transparency, Inc.*, 611 F.3d at 501. The Court, however, need not accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."  *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).  While a complaint need not allege detailed factual allegations, it must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).  In dismissing for failure to state a claim leave to amend should be granted unless the pleading could not possibly be cured by the allegation of other facts.  *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).  Furthermore, "[c]ourts have a duty to construe pro se pleadings liberally, including pro se motions as well as complaints."  *Bernhardt v. L.A. Cnty.*, 339 F.3d 920, 925 (9th Cir. 2003).

## III. DISCUSSION

**A.   Plaintiff Judith Ambers Lacks Standing.**

Wells Fargo argues that the case should be dismissed because Judith Ambers lacks standing as she was not the original borrower.  Dkt. No. 8 at 14:9-15:22.  Plaintiff fails to address this argument in her opposition.[3]

A person who is not a party to a contract does not have standing either to seek its enforcement or to bring tort claims based on the contractual relationship.  *Mega Life &*

---

[3] Plaintiff's response to Wells Fargo's motion to dismiss discusses claims not alleged in the complaint and addresses arguments not raised by Wells Fargo.  *See, e.g.*, Dkt. No. 13 at 13-14, 18 (addressing negligence, breach of contract, breach of the implied covenant of good faith and fair dealing, and unjust enrichment, among other claims).

*Health Ins. Co. v. Super. Ct.*, 172 Cal. App. 4th 1522, 1528-32 (2009); *Hatchwell v. Blue Shield of Cal.*, 198 Cal. App. 3d 1027, 1034 (1988) ("Someone who is not a party to the contract has no standing to enforce the contract or to recover extra-contract damages for wrongful withholding of benefits to the contracting party."); *see also Andrew Smith Co. v. Paul's Pak, Inc.*, 754 F. Supp. 2d 1120, 1133 (N.D. Cal. 2010) ("A third party who is only incidentally benefited by a contract does not have standing to enforce the contract . . . . In order to have standing as a third party beneficiary, the contract must be expressly entered into for the intended benefit of the third party." (citations omitted)).

District courts in the Ninth Circuit have held that a plaintiff who is not a party to a mortgage loan cannot assert TILA, RESPA, ECOA, UCL, or fraud claims against a lender for improper disclosures. *Thomas v. Guild Mortgage Co.*, No. 09-cv-2687, 2011 WL 676902, at *4 (D. Ariz. Feb. 23, 2011) (citing cases); *see, e.g.*, *Cabrera v. Countrywide Fin.*, No. 11-cv-4869 SI, 2012 WL 5372116, at *8 (N.D. Cal. Oct. 30, 2012) (dismissing claims for violations of UCL, ECOA, and other claims for lack of standing because only plaintiff's husband was a signatory to the mortgage); *Brockington v. J.P. Morgan Chase Bank, N.A.*, No. 08-cv-05795 RMW, 2009 WL 1916690, at *3 (N.D. Cal. July 1, 2009) (holding that plaintiff who was not a party to the loan transaction had no standing as an alleged "equitable owner" of the property to challenge defendant's conduct in connection with extending mortgage loan to plaintiff's daughter, or to assert claim for unlawful concealment of facts in such transaction); *Cleveland v. Deutsche Bank Nat. Trust Co.*, No. 08-cv-0802, 2009 WL 250017, at *2 (S.D. Cal. Feb. 2, 2009) (dismissing claims for fraud, violation of TILA, RESPA, UCL, and other claims for lack of standing because the borrower to the loan was plaintiff's wife); *see also* Cal. Civ. Code § 2923.5 (imposing a requirement to contact "the borrower").

The complaint here alleges that the deed of trust was issued in the name of Brent Ambers. Dkt. Nos. 1 at 22 ¶ 3; 9-1 at 1, 8. Plaintiff does not allege or even argue in her opposition that she was a party, or a third-party beneficiary to the agreements with Wells Fargo's predecessor, or that she has some other basis to assert standing to bring the claims

1    in this action.  Accordingly, the Court dismisses plaintiff's claims with leave to amend.

2        However, even if plaintiff could demonstrate standing, the Court concludes below

3    that each of the causes of action asserted in the complaint also fails to state a claim for

4    relief.

5    **B.    Preemption under HOLA**

6        Wells Fargo moves to dismiss plaintiff's state law claims on the basis that they are

7    preempted by the federal Home Owner's Loan Act ("HOLA"), 12 U.S.C. § 1461, *et seq.*

8    Dkt. No. 8 at 28:9-32:23.  In the field of national banking, Congress has created an

9    "extensive federal statutory and regulatory scheme," *Bank of Am. v. City & Cnty. of San*

10   *Francisco*, 309 F.3d 551, 558 (9th Cir. 2002), which gives "both enumerated and incidental

11   'powers' to national banks as grants of authority not normally limited by, but rather

12   ordinarily pre-empting, contrary state law," *Barnett Bank v. Nelson*, 517 U.S. 25, 32 (1996).

13   HOLA is a "radical and comprehensive response to the inadequacies of the existing state

14   system, . . . so pervasive as to leave no room for state regulatory control." *Silvas v.*

15   *E*Trade Mortg. Corp.*, 514 F.3d 1001, 1004 (9th Cir. 2008) (internal citation omitted).

16   Under HOLA, the Office of Thrift Supervision ("OTS") has "broad authority to issue

17   regulations governing . . . federal savings associations." *Id.* at 1005.  The OTS has stated

18   expressly that it "occupies the entire field of lending regulation for federal savings

19   associations." 12 C.F.R. § 560.2(a).

20       HOLA applies to this case even though Wells Fargo is not a federal savings

21   association because Brent Ambers's loan originated with World Savings Bank, which was a

22   federally chartered savings association regulated by the OTS.  Dkt. No. 9-1 at 1-27.  *See*

23   *McDonald v. Wells Fargo Bank, N.A.*, 13-cv-02334 KAW, 2013 WL 6512881, at *6 (N.D.

24   Cal. Dec. 12, 2013); *Appling v. Wachovia Mortg., FSB*, 745 F. Supp. 2d 961, 971 (N.D. Cal.

25   2010) (holding that "although Wells Fargo itself is not subject to HOLA and OTS

26   regulations, this action is nonetheless governed by HOLA because Plaintiff's loan originated

27   with a federal savings bank and was therefore subject to the requirements set forth in HOLA

28   and OTS regulation.").

A preemption analysis under HOLA requires a court to determine whether the law at issue is identified in 12 C.F.R. § 560.2(b), which provides a nonexclusive list of the types of state laws preempted by HOLA. *See Silvas*, 514 F.3d at 1005. Among the laws specifically preempted by HOLA are those affecting "terms of credit, including amortization of loans and the deferral and capitalization of interest and adjustments to the interest rate, balance, payments due, or term to maturity of the loan"; "[d]isclosure and advertising, including laws requiring specific statements, information, or other content to be included in credit application forms, credit solicitations, billing statements, credit contracts, or other credit related documents and laws requiring creditors to supply copies of credit reports to borrowers or applicants"; and "[p]rocessing, origination, servicing, sale or purchase of, or investment or participation in, mortgages." 12 C.F.R. § 560.2(b)(4), (9), and (10).

If the state law at issue falls into one of the enumerated categories, then it is preempted by HOLA. *Silvas*, 514 F.3d at 1005. If it does not fall into one of the enumerated categories but affects lending, a presumption of preemption arises that is reversed only "if the law can clearly be shown to fit within the confines of paragraph (c) [of § 560.2]." *Id.* Section 560.2(c) excludes from preemption "[s]tate laws . . . that . . . only incidentally affect the lending operations of federal savings associations." 12 C.F.R. § 560.2(c). Examples of permissible state regulation include legislation that "regulate[s] national banks in areas such as contracts, debt collection, acquisition and transfer of property, and taxation, zoning, criminal, and tort law." *Bank of Am.*, 309 F.3d at 559.

Here, plaintiff brings five state law claims: for fraudulent inducement to breach of contract, fraud and conspiracy to commit fraud, violation of California Civil Code § 2923.5, and for unlawful and fraudulent business practices under California Business & Professions Code § 17200. With respect to plaintiff's claim that defendants failed to contact "plaintiffs" prior to recording the notice of default in violation of § 2923.5, Wells Fargo urges the Court to find that the claim is preempted on the ground that it "concerns the processing and servicing of Brent's mortgage." Dkt. No. 8 at 32:10-21. However, this Court has already rejected this argument, holding that any effect § 2923.5 has on lending operations is only

incidental, and that it furthers a vital state interest.  *Fernandez v. Wells Fargo Bank, N.A.*, No. 12-cv-03941 NC, 2012 WL 5350256, at *6 (N.D. Cal. Oct. 29, 2012).  Wells Fargo does not address the Court's prior holding or provide any reason why the Court should reach a different conclusion in this case.  Accordingly, the Court finds that plaintiff's claims under § 2923.5 and for unlawful business practices predicated on § 2923.5 are not preempted.

However, the preemption analysis with respect to the remaining state law claims is less straightforward.  Generally, "when courts find claims of fraud or misrepresentation to be preempted, the allegations are related to inadequate disclosures of fees, interest rates, or other loan terms, or inadequate notice of various rights and procedures during the foreclosure process," because "such claims would effectively impose requirements that banks include specific information in loan documents or provide specific notices during foreclosure."  *DeLeon v. Wells Fargo Bank, N.A.*, No. 10-cv-01390 LHK, 2011 WL 311376, at *6 (N.D. Cal. Jan. 28, 2011); *see also Biggins v. Wells Fargo & Co.*, 266 F.R.D. 399, 417 (N.D. Cal. 2009) (finding preempted claims for breach of implied covenant, fraud, § 17200, and unjust enrichment premised upon allegations that defendants did not adequately disclose certain information to plaintiffs); *Hayes v. Wells Fargo Bank, N.A.*, No. 13-cv-0420 KAW, 2013 WL 4117050, at *5 (N.D. Cal. Aug. 12, 2013) (to the extent "fraudulent inducement to breach of contract" claim rested on allegations that defendant failed to provide proper disclosures during the loan origination process, those allegations were preempted).  "In contrast, when a plaintiff's claim relies on the general duty not to misrepresent material facts, and when application of the law does not regulate lending activity, California district courts have found that the claims are not preempted."  *DeLeon*, 2011 WL 311376, at *6 (holding that allegations that Wells Fargo falsely represented it would complete a loan modification agreement and no foreclosure sale would occur while the loan modification was pending were not preempted by HOLA).  *Id.*

As discussed below, it is unclear on what factual basis plaintiff bases her remaining state law claims and the Court concludes that plaintiff fails to state a claim for relief.  In

1   light of this conclusion and the Court's dismissal of the state law claims with leave to

2   amend, it is premature to analyze whether those claims would be preempted under HOLA.

3   **C.    The Complaint Fails to State a Claim for Fraudulent Inducement to Breach of Contract (First Claim).**

4

5       Plaintiff's first claim for relief alleges that "[b]ased upon the allegations noted above,

6   plaintiffs were fraudulently induced to breach the contract with defendants."  Dkt. No. 1 at

7   28 ¶ 10.  Wells Fargo argues that this claim should be dismissed as time-barred and because

8   plaintiff fails to allege fraud with sufficient particularity.  Dkt. No. 8 at 16:19-17:22.  The

9   Court agrees.

10      **1.    The Claim for Fraudulent Inducement to Breach of Contract Fails to Allege Fraud with Particularity.**

11

12      Claims sounding in fraud are subject to the heightened pleading requirements of

13  Federal Rule of Civil Procedure 9(b).  A plaintiff alleging fraud "must state with

14  particularity the circumstances constituting fraud . . . ."  Fed. R. Civ. P. 9(b).  Thus, plaintiff

15  must allege "an account of the time, place, and specific content of the false representations

16  as well as the identities of the parties to the misrepresentations."  *Swartz v. KPMG LLP*, 476

17  F.3d 756, 764 (9th Cir. 2007) (internal quotation marks and citation omitted).  Mere

18  conclusory allegations of fraud will not suffice.  *Bosse v. Crowell Collier & Macmillan*, 565

19  F.2d 602, 611 (9th Cir. 1977); *Das v. WMC Mortgage Corp.*, 831 F. Supp. 2d 1147, 1166

20  (N.D. Cal. 2011).

21      Here, it appears that plaintiff is alleging that Wells Fargo fraudulently induced the

22  breach of the loan agreement with Brent Ambers.  Dkt. No. 1 at 28 ¶ 10.  While the claim

23  incorporates by reference the preceding paragraphs of the complaint, however, the factual

24  basis for this claim is unclear.  Plaintiff does not describe any false statements made by

25  Wells Fargo, or when, where, and how the statements were made.  To the extent that

26  plaintiff intends to base her claim on the allegations that she was induced to discontinue

27  mortgage and/or bankruptcy payments because a "loan modification program advised the

28  plaintiff not to make any more mortgage or Bankruptcy payments," plaintiff fails to allege

"the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations" or why they are attributable to Wells Fargo. Dkt. No. 1 at 24 ¶ 5. Because plaintiff's allegations do not meet Rule 9(b)'s pleading standard, the claim for fraudulent inducement to breach of contract is dismissed with leave to amend.

### 2. The Claim for Fraudulent Inducement to Breach of Contract Is Barred by the Statute of Limitations.

The statute of limitations for fraud in California is three years. *Newsom v. Countrywide Home Loans, Inc.*, 714 F. Supp. 2d 1000, 1014 (N.D. Cal. 2010); Cal. Civ. Proc. Code § 338(d). "Generally, 'the three-year period does not begin to run until the plaintiff has actual or constructive notice of the facts constituting the fraud.'" *McDonald v. Wells Fargo Bank, N.A.*, No. 13-02334 KAW, 2013 WL 6512881, at *5 (N.D. Cal. Dec. 12, 2013) (citing *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980)). "Constructive notice is knowledge of facts sufficient to make a reasonably prudent person suspicious of fraud, thus putting him on inquiry." *Id.*

Here, it appears that the breach of the loan agreement occurred no later than July 2009, when a notice of default was recorded on the loan as a result of non-payment. Dkt. Nos. 1 at 22 ¶ 3; 9-1 at 38-40. Thus, any inducement to breach the loan must have occurred prior to the July 2009 notice of default. *Id.* Plaintiff did not commence this action until May 2013, which is more than three years after Brent Ambers defaulted on the loan. The Court finds that, as currently alleged, plaintiff's claim for fraudulent inducement of breach of contract is time-barred. Accordingly, the claim is dismissed with leave to amend.

### D. The Complaint Fails to State a Claim under TILA (Second and Fifth Claims)

Plaintiff's second and fifth claims seek relief under TILA. Dkt. No. 1 at 29 ¶ 17, 33 ¶¶ 42-44. The second claim states that "Defendants violated TILA at the initial time of purchase by failing to provide plaintiff with accurate and clear and conspicuous material disclosures required under TILA and failing to fully inform plaintiff of the pros and cons of the mortgage presented for final approval, failing to properly disclose the interest rate on the loan, and more." *Id.* at 29 ¶ 17. Plaintiff's fifth claim alleges that "[a]cts constituting

predatory lending in this matter include, but are not limited to, the fact that this loan was marketed in a way that failed to fully disclose all material times"; that "the loan contains terms that were inherently unfair, fraudulent or unconscionable"; and that the "loan documents do not plainly and prominently disclose the good faith estimate of closing costs, the site of a yield spread premium." *Id.* at 33 ¶¶ 43-44.  The complaint also alleges that, from a loan audit conducted in connection with the bankruptcy process, "it was learned" that there were questions concerning the origination of the loan, having to do with a number of documents and disclosures that were absent from the "loan file" in violation of TILA and RESPA.  *Id.* ¶¶ 6-7.  Wells Fargo contends that the two TILA claims should be dismissed as time-barred.  The Court agrees.

TILA obligates lenders to make certain disclosures to the borrower relating to finance charges. 15 U.S.C. §§ 1638, 1632.  A damages claim for a TILA violation must be brought "within one year from the date of the occurrence of the violation." *Id.* § 1640(e).  The statutory period generally runs from the date the loan agreement was executed. *Meyer v. Ameriquest Mortg. Co.*, 342 F.3d 899, 902 (9th Cir. 2003) ("The failure to make the required disclosures occurred, if at all, at the time the loan documents were signed.").  Here, plaintiff's claims for relief under TILA are based on allegations that Wells Fargo's predecessor did not provide certain documentation and/or disclosures at the time the loan originated, which was in November 2006. Dkt. Nos. 1 at 22 ¶ 3; 9-1 at 1-23.  Therefore, the time period for bringing an action for damages ended in November 2007.  Because plaintiff did not file this action until 2013, the TILA claims for damages are time-barred.

The Court recognizes, however, that "the doctrine of equitable tolling may, in the appropriate circumstances, suspend the limitations period until the borrower discovers or had reasonable opportunity to discover the fraud or nondisclosures that form the basis of the TILA action." *King v. State of Cal.*, 784 F.2d 910, 915 (9th Cir. 1986).  As the Ninth Circuit has further explained, "'[e]quitable tolling' focuses on whether there was excusable delay by the plaintiff: If a reasonable plaintiff would not have known of the existence of a possible claim within the limitations period, then equitable tolling will serve to extend the

statute of limitations for filing suit until the plaintiff can gather what information he needs. . . . Equitable estoppel, on the other hand, focuses primarily on actions taken by the *defendant* to prevent a plaintiff from filing suit, sometimes referred to as 'fraudulent concealment.'" *Lukovsky v. City & Cnty. of San Francisco*, 535 F.3d 1044, 1051 (9th Cir. 2008) (internal quotation marks and citations omitted). In other words, plaintiff must allege facts demonstrating that he or she could not have discovered the alleged violations by exercising reasonable diligence. *Rosenfeld v. JPMorgan Chase Bank, N.A.*, 732 F. Supp. 2d 952, 964 (N.D. Cal. 2010); *see also Hubbard v. Fid. Fed. Bank*, 91 F.3d 75, 79 (9th Cir. 1996) (plaintiff was not entitled to equitable tolling on TILA claim where "nothing prevented [plaintiff] from comparing the loan contract, [lender]'s initial disclosures, and TILA's statutory and regulatory requirements."). Moreover, a tolling of the statute of limitations based on fraudulent concealment must be alleged with particularity, and cannot be based simply on a restatement of the TILA claims. *Robertson v. Bank of Am., NA*, No. 10-cv-3525 SBA, 2011 WL 1231003, at *3 (N.D. Cal. Apr. 1, 2011) (citations omitted).

Here, the complaint states that "[a]ny and all statutes of limitations relating to disclosures and notices for client pursuant to 15 US 1601 *et seq* were tolled due to the hidden nature of this violation, which did not reveal itself until within the past year." Dkt. No. 1 at 29 ¶ 18. This conclusory assertion, which is not supported by any facts showing "the hidden nature of the violation" or why it "did not reveal itself until within the past year" is insufficient to allege fraudulent concealment or entitlement to equitable tolling. However, because the Ninth Circuit generally disfavors resolving a motion to dismiss on equitable tolling grounds unless it is clear that equitable tolling is inappropriate, plaintiff's damages claims brought under TILA are dismissed with leave to amend. *See Rai v. GMAC Mortgage*, No. 10-cv-04291 LHK, 2011 WL 337842, at *4 (N.D. Cal. Jan. 31, 2011) (citing *Supermail Cargo, Inc. v. United States*, 68 F.3d 1204, 1206 (9th Cir. 1995)).

Additionally, to the extent plaintiff seeks rescission under TILA, such a claim is also time-barred. Under TILA, a borrower generally may rescind a loan within three business days after it is consummated. 15 U.S.C. § 1635(a). The right to rescission expires "three

years after the date of consummation of the transaction or upon the sale of the property,

whichever occurs first, notwithstanding the fact that the information and forms required

under this section or any other disclosures required under this part have not been delivered

. . . ." *Id.* § 1635(f). Section 1635(f) is "a statute of repose, depriving the courts of subject

matter jurisdiction when a § 1635 claim is brought outside the three-year limitation period."

*Miguel v. Country Funding Corp.*, 309 F.3d 1161, 1164 (9th Cir. 2002); *Beach v. Ocwen*

*Fed. Bank*, 523 U.S. 410, 419 (1998) (TILA "permits no federal right to rescind,

defensively or otherwise, after the 3-year period of § 1635(f) has run."). Because the loan

transaction here was consummated in November 2006, the time period to bring a claim for

rescission under TILA expired in November 2009. Therefore, as plaintiff did not file this

action until 2013, any claim in the complaint for rescission under TILA arising out of the

November 2006 loan is time-barred and is dismissed without leave to amend.

**E.    The Complaint Fails to State a Claim for Fraud and Conspiracy to Commit
Fraud (Third Claim).**

Plaintiff's third claim alleges that "defendants have committed fraud upon plaintiff

and the general public" and that "defendants had no intent of actually providing plaintiffs

with a meaningful loan modification." Dkt. No. 1 at 30 ¶ 23. Plaintiff alleges that while

defendants were "leading plaintiffs down a Primrose Path, reassuring them that they were in

fact getting a loan modification, defendant were [sic] also actively foreclosing on plaintiffs

property." *Id.* ¶ 24. The complaint further states that "defendants" committed the alleged

fraudulent acts in furtherance of a conspiracy. *Id.* ¶ 25-27.

Wells Fargo moves to dismiss this claim on the ground that it does not meet the

pleading requirements of Federal Rule of Civil Procedure 9(b). Dkt. No. 8 at 19:15-26.

The Court concludes that the complaint does not provide any factual basis for the assertion

that Wells Fargo made any statements to plaintiff or her husband that they were getting a

loan modification. As in her claim for fraudulent inducement, plaintiff fails to allege "the

time, place, and specific content of the false representations as well as the identities of the

parties to the misrepresentations." *See McDonald*, 2013 WL 6512881, at *5-6 (dismissing a

fraud claim as not alleged with particularity based on identical allegations).  As to plaintiff's allegations of conspiracy, they are not independently actionable as "[c]onspiracy is not a cause of action, but a legal doctrine that imposes liability on persons who, although not actually committing a tort themselves, share with the immediate tortfeasors a common plan or design in its perpetration." *Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 510-11 (1994).

Accordingly, plaintiff's third claim for fraud and conspiracy to commit fraud is dismissed, with leave to amend, for failure to allege fraud with particularity.

**F.     The Complaint Fails to State a Claim for Violation of California Civil Code § 2923.5 (Fourth Claim).**

Plaintiff brings her fourth claim for relief under California Civil Code § 2923.5, alleging that defendants failed to contact "plaintiffs" prior to recording the notice of default to assess their financial situation and explore options to avoid foreclosure.  Dkt. No. 1 at 32 ¶¶ 33-34.  Wells Fargo moves to dismiss this claim on several grounds.  Dkt. No. 8 at 20:22-22:8.  While the Court disagrees with Wells Fargo's argument that plaintiff's § 2923.5 claim is preempted by HOLA, the Court concludes that the claim must be dismissed for failure to state a claim and as time-barred.

**1.     Plaintiff Fails to State a Claim under § 2923.5 Because the Statute Does Not Provide a Remedy Post-Foreclosure.**

California Civil Code § 2923.5 requires a mortgage servicer to contact borrowers "in person or by phone in order to assess the borrower's financial situation and explore options for the borrower to avoid foreclosure" prior to recording a notice of default.  *Jones v. Wells Fargo Bank, N.A.*, 13-cv-00903 NC, 2013 WL 2355447, at *4 (N.D. Cal. May 29, 2013).  As this Court previously held, "the only remedy under § 2923.5 is postponement of the sale in order for the lender to comply with the statutory requirements." *Id.* (citing *Mabry v. Super. Ct.*, 185 Cal. App. 4th 208, 214 (2010)).  Once a sale is held, the statute is no longer actionable. *Aguilera v. Hilltop Lending Corp.*, No. 10-cv-0184 JL, 2010 WL 3340566, at *4-5 (N.D. Cal. Aug. 25, 2010).

Here, the complaint seeks to have the notice of default declared void and seeks damages in an amount to be proved at trial. Dkt. No. 1 at 32-33 ¶¶ 38-40. However, as the complaint itself alleges, the subject property has already been sold. Dkt. Nos. 1 at 22 ¶ 3; 9-1 at 58-60. Therefore, the complaint does not state a claim for relief under § 2923.5 and the claim is dismissed. Plaintiff has leave to amend her § 2923.5 claim if she can plead facts that show the statute provides a remedy to her.

### 2. The Claim Under § 2923.5 Is Time-Barred.

Finally, plaintiff's claim under § 2923.5 also appears barred by the applicable statute of limitations. In California, the time to bring "an action upon a liability created by statute" is three years. Cal. Civ. Proc. Code § 338(a). The alleged violation here occurred no later than July 2009 when the notice of default was recorded. Dkt. Nos. 1 at 22 ¶ 3, 32 ¶ 33; 9-1 at 38-40. Because plaintiff did not bring this action until May 2013, the claim is time-barred and is dismissed on this ground as well, with leave to amend.

### G. The Complaint Fails to State a Claim for Unfair Competition (Sixth and Seventh Claims).

The complaint asserts two claims under the California Unfair Competition Law ("UCL"), Cal. Bus. & Profs. Code § 17200. Plaintiff's sixth claim is for unlawful business practices predicated on California Civil Code § 2923.5, and alleges that, "[b]y failing to comply with the legal prerequisites for foreclosure proceedings, defendants, . . . , are engaging in unfair business practices such as to justify the relief sought under the UCL." Dkt. No. 1 at 34-35 ¶¶ 47-53. The seventh claim alleges fraudulent business practices. *Id.* at 35 ¶¶ 54-56. While this claim is also labeled "Predicated on Civil Code § 2923.5," it alleges that Wells Fargo engaged in the following "fraudulent practices": (1) "promising homeowners loan modifications that defendants have no intention of actually providing"; (2) "routinely issuing NOD's without first complying with the legal requirements of California Civil Code section 2923.5"; (3) "repeatedly demanding documentation from borrowers with full knowledge or in reckless disregard of the fact that said documentation had already been provided"; (4) "continuing to demand and accept mortgage payments that

have in fact foreclosed"; (5) and "intentionally misleading Plaintiff into believing that a foreclosure had not occurred or that one had been entered in "error." *Id.* ¶ 56.

### 1.    Plaintiff Fails to State a Claim Based on Unlawful or Fraudulent Business Practices.

Claims of unlawful business practices under § 17200 must be based on some other violation of law. *Cel–Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999) ("[S]ection 17200 borrows violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable."). Because the Court dismisses plaintiff's claim under California Civil Code § 2923.5, her claim under California Business & Professions Code § 17200, predicated on the allegations that Wells Fargo violated § 2923.5, must also be dismissed. If plaintiff amends her complaint to cure the deficiencies in alleging a § 2923.5 claim, she may restate her § 17200 claim as well. *See Fernandez v. Wells Fargo Bank, N.A.*, 12-cv-03941 NC, 2012 WL 5350256, at *7 (N.D. Cal. Oct. 29, 2012).

Additionally, plaintiff fails to state a claim based on "fraudulent" acts or practices. In order to state a claim under the fraudulent business practice prong of § 17200, plaintiff must meet the heightened pleading standards for fraud mandated under Federal Rule of Civil Procedure 9(b). *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009). Here, the alleged fraudulent practices have no particularized factual basis in the complaint. Because plaintiff fails to state with particularity the circumstances constituting fraud as required by Rule 9(b), her claim based on the "fraudulent" prong of § 17200 is dismissed with leave to amend.

### 2.    The UCL Claims Are Dismissed for Lack of Standing.

Wells Fargo also argues that plaintiff's UCL claims should be dismissed for lack of standing because she has not alleged an injury in fact and loss of money or property caused by Wells Fargo because "[a]ny injury and loss would have been caused by Brent's failure to make the mortgage payments as promised." Dkt. No. 8 at 23:26-24:9. To bring a claim under the UCL, plaintiff must have suffered an injury in fact and lost money or property as

a result of Wells Fargo's alleged unfair or fraudulent practices.  Cal. Bus. & Profs. Code § 17204; *Clayworth v. Pfizer, Inc.*, 49 Cal. 4th 758, 788 (2010); *see, e.g., DeLeon*, 2011 WL 311376, at \*7 (holding that plaintiffs lacked standing under the UCL where the facts alleged suggested plaintiffs lost their home because they became unable to keep up with monthly payments and lacked the financial resources to cure the default, rather than because of Wells Fargo's alleged misrepresentations).  Here, plaintiff fails to allege an injury in fact and loss of money or property caused by Wells Fargo.  As in *DeLeon*, it appears from the complaint that the loss of the home was a result of financial hardship and Brent Ambers's default on the loan payments, not Wells Fargo's alleged unfair business practices.  *See* Dkt. No. 1 at 23 ¶¶ 3-5.  Accordingly, the UCL claims are also dismissed with leave to amend for lack of standing.

**H.    Additional Allegations**

In addition to the claims for relief that are labeled as such, the complaint refers in passing to violations of other statutes.  Given plaintiff's pro se status, the Court will treat these references as an attempt to allege claims under those additional statutes.

**1.    The Complaint Fails to State a Claim Under RESPA.**

Plaintiff vaguely alleges that the list of "questions" purportedly raised by "a preliminary Mortgage Loan Audit and Loan Document Analysis" concerning the origination of the loan violated RESPA and ECOA, in addition to TILA.  Dkt. No. 1 at 24-28 ¶¶6-8.  Wells Fargo moves to dismiss plaintiff's claim under RESPA on the grounds that it is barred by the statute of limitations and that it fails to state a claim.  Dkt. No. 8 at 24:12-25:2.

"Congress enacted RESPA to control real estate settlement costs by 'insur[ing] that consumers throughout the Nation are provided with greater and more timely information on the nature and costs of the settlement process and are protected from unnecessarily high settlement charges caused by certain abusive practices that have developed in some areas of the country.'"  *Bloom v. Martin*, 865 F. Supp. 1377, 1381 (N.D. Cal. 1994), *aff'd*, 77 F.3d 318 (9th Cir. 1996) (quoting 12 U.S.C. § 2601(a) (1989)).  "To effectuate these objectives,

RESPA requires advance disclosure of settlement costs, the elimination of kickbacks or referral fees, and a reduction of the amount that buyers are required to place in escrow accounts for taxes and insurance." *Id.* (12 U.S.C. § 2601(b) (1989)).

Depending on which specific provision of the statute is asserted, a RESPA claim must be made within one to three years "from the date of the occurrence of the violation." 12 U.S.C. § 2614; *Blackwell v. Wells Fargo Home Mortg., Inc.*, No. 10-cv-04917 JF, 2011 WL 250436, at *2 (N.D. Cal. Jan. 26, 2011) (the RESPA statute of limitations runs on the date the loan is consummated); *Metcalf v. Drexel Lending Grp.*, No. 08-cv-00731, 2008 WL 4748134, at *9 (S.D. Cal. Oct. 29, 2008) ("Typically, in cases involving loan documents, the statute begins to run when the documents are signed unless evidence is presented to override this assumption." (citation omitted)). Here, the loan was consummated in November 2006 and thus plaintiff's RESPA claims expired no later than November 2009. Because plaintiff did not bring this lawsuit until May 2013, her RESPA claim is time-barred absent tolling.

The circuit courts are split as to whether equitable tolling can apply to RESPA claims, and the Ninth Circuit has not directly considered the issue. District courts within this District deciding the issue have held that equitable tolling is available. *Spears v. First Am. eAppraiseIt*, No. 08-cv-00868 RMW, 2013 WL 1748284, at *3 (N.D. Cal. Apr. 23, 2013); *Marcelos v. Dominguez*, No. 08-cv-00056 WHA, 2008 WL 1820683, at *6 (N.D. Cal. Apr. 21, 2008). "Equitable tolling may be applied if, despite all due diligence, a plaintiff is unable to obtain vital information bearing on the existence of his claim." *Gens v. Wachovia Mortg. Corp.*, No. 10-cv-01073 LHK, 2011 WL 1791601, at *6 (N.D. Cal. May 10, 2011), *aff'd*, 503 F. App'x 533 (9th Cir. 2013) (quoting *Santa Maria v. Pac. Bell*, 202 F.3d 1170, 1178 (9th Cir. 2000)). Here, plaintiff has not alleged any facts supporting equitable tolling.

Additionally, Wells Fargo contends that the complaint does not sufficiently state a claim under RESPA because it does not have any factual allegations suggesting that plaintiff suffered pecuniary loss. RESPA provides that anyone who fails to comply with its provisions shall be liable to the borrower for "any actual damages to the borrower as a

result of the failure." 12 U.S.C. § 2605(f)(1).  A number of courts within this District have held that, in order to state a claim under RESPA, a plaintiff must allege that they suffered actual, pecuniary damages as a result of the RESPA violation.  *See, e.g.*, *Tamburri v. Suntrust Mortg., Inc.*, 875 F. Supp. 2d 1009, 1014-15 (N.D. Cal. 2012); *Allen v. United Fin. Mortg. Corp.*, 660 F. Supp. 2d 1089, 1097 (N.D. Cal. 2009).  Because plaintiff has not alleged any pecuniary loss resulting from Wells Fargo's alleged violations of RESPA, she has failed to state a claim.  The RESPA claim is dismissed with leave to amend.

### 2.      The Complaint Fails to State a Claim Under ECOA.

Wells Fargo contends that plaintiff's claim under ECOA should be dismissed because it is barred by the statute of limitations and because it fails to state a claim. Dkt. No. 8 at 25:3-24.  ECOA makes it unlawful "for any creditor to discriminate against any applicant, with respect to any aspect of a credit transaction—(1) on the basis of race, color, religion, national origin, sex or marital status, or age (provided the applicant has the capacity to contract); (2) because all or part of the applicant's income derives from any public assistance program; or (3) because the applicant has in good faith exercised any right under this chapter." 15 U.S.C. § 1691.  ECOA provides a two-year statute of limitations from the date of the violation.  15 U.S.C. § 1691e(f) (2007); *Cabrera v. Countrywide Fin.*, No. 11-cv-4869 SI, 2012 WL 5372116, at *4-5 (N.D. Cal. Oct. 30, 2012).  ECOA allows for the applicant to have an additional year to file a claim after the commencement of an enforcement proceeding by either an agency or the Attorney General, if the enforcement proceeding is commenced within two years of the date of the violation.  *Id.*  However, even assuming that the exception applies, plaintiff's ECOA claim expired no later than November 2009, three years after the loan's origination in November 2006.  Furthermore, as with her TILA and RESPA claims, plaintiff has not alleged any facts supporting equitable tolling.  *See Cabrera*, 2013 WL 1345083, at *5 (rejecting request to equitably toll two year statute of limitations on ECOA claim because plaintiff failed to allege facts to show that he could not have discovered the alleged violations despite his exercise of reasonable diligence).

Additionally, while the Ninth Circuit has not had an opportunity to articulate a standard for ECOA discrimination claims, other circuits apply a multi-element test to determine whether a plaintiff has properly pleaded a claim of discrimination under ECOA. To satisfy this test, plaintiff must allege that: (1) she is a member of a protected class; (2) she applied for credit with defendants; (3) she qualified for credit; and (4) she was denied credit despite being qualified. *Harvey v. Bank of Am., N.A.*, 906 F. Supp. 2d 982, 990 (N.D. Cal. 2012); *Hafiz v. Greenpoint Mortg. Funding, Inc.*, 652 F. Supp. 2d 1039, 1045 (N.D. Cal. 2009). Plaintiff has failed to allege any of these elements. Accordingly, plaintiff's claim for violation of ECOA is dismissed with leave to amend.

### 3.    The Complaint Fails to State a Claim for Improper Securitization or Assignment.

The complaint refers in passing to "Improper Securitization of Loan/Note; Improper Assignment of Mortgage/Deed of Trust/MERS" as part of a list of "unethical and illegal business practices" allegedly committed by "defendants." Dkt. No. 1 at 28 ¶ 8. Wells Fargo contends that, to the extent plaintiff seeks to challenge its authority to foreclose on the loan plaintiff fails to state a claim on the grounds that: (1) plaintiff cannot bring an action requiring Wells Fargo to prove its authority to proceed with non-judicial foreclosure because California does not provide for such a cause of action and previous cases have acknowledged that foreclosing entities have standing to foreclose in spite of securitization of a loan; and (2) even if Wells Fargo were required to show it owned the loan and was authorized to foreclose, the judicially noticeable documents would demonstrate Wells Fargo's authority. Dkt. No. 8 at 26:1-27:8. The Court agrees.

First, plaintiff alleges no factual basis to support a claim that Wells Fargo engaged in improper securitization or assignment, or that the foreclosure process was initiated or conducted by the wrong entity. As courts have noted, "[n]othing in the statutory provisions establishing the nonjudicial foreclosure process suggests that" a borrower may, "bring a civil action in order to test whether the person electing to sell the property is, or is duly authorized to do by, the owner of the beneficial interest in it." *Gomes v. Countrywide Home*

*Loans, Inc.*, 192 Cal. App. 4th 1149, 1154 (2011).  Moreover, "courts have repeatedly rejected claims asserting that a foreclosing entity lacks standing [to foreclose] as a result of securitization of the loan."  *Mullins v. Wells Fargo Bank, N.A.*, No. 13-cv-0453, 2013 WL 5299181, at *13 (E.D. Cal. Sept. 18, 2013) (citing *Krug v. Wells Fargo Bank, N.A.*, No. 11-cv-5190 RS, 2011 WL 6182341, at *2 (N.D. Cal. Dec. 13, 2011) (rejecting plaintiff's contention "that as a result of [plaintiff's] loan having been securitized and the particular manner in which that was done, the entities now seeking to foreclose lack standing to do so.")); *see also Hague v. Wells Fargo Bank, N.A.*, No. 11-02366 TEH, 2011 WL 3360026, at *3 (N.D. Cal. Aug. 2, 2011) (concluding that "Wells Fargo need not demonstrate that it has 'full and unencumbered legal title' in order to foreclose . . . . [i]t need only comply with California's nonjudicial foreclosure statutes.").

Additionally, Wells Fargo can demonstrate that it was authorized to foreclose as the documents of which this Court took judicial notice, similar to those noticed by other courts, "reveal that the original lender, World Savings Bank, FSB, simply changed its name to Wachovia Mortgage, FSB, and is now a division of Wells Fargo Bank, N.A., so transfers among those entities were proper."  Dkt. No. 9-1 at 8-37; *see, e.g.*, *Nguyen v. Wells Fargo Bank, N.A.*, 749 F. Supp. 2d 1022, 1035 (N.D. Cal. 2010).

Accordingly, insofar as plaintiff has attempted to bring a claim for improper securitization or assignment, the claim is dismissed with leave to amend.

## IV. CONCLUSION

Wells Fargo's motion to dismiss is GRANTED and the complaint is DISMISSED. Plaintiff has LEAVE TO AMEND her complaint in accordance with this order, and must file any amendment by March 28, 2014.  If she chooses not to amend her complaint, the case will be dismissed with prejudice.

IT IS SO ORDERED.

Date: March 3, 2014

_____
Nathanael M. Cousins
United States Magistrate Judge